**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**UNITED STATES OF AMERICA,**

     **Plaintiff,**

**v.**                                    **No.**    **03-cr-1832 RB**
                                                      **16-cv-0661 RB/SMV**

**MARCELLO JIMENEZ,**

     **Defendant.**

## ORDER ADOPTING MAGISTRATE JUDGE'S
## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before the Court on the Magistrate Judge's Proposed Findings and Recommended Disposition [CR Doc. 93; CV Doc. 18] ("PF&RD") issued on November 16, 2016.  On reference by the undersigned, [Doc. 17],[1] the Honorable Stephan M. Vidmar, United States Magistrate Judge, recommended granting Defendant Marcello Jimenez's Motion to Correct Sentence under 28 U.S.C. § 2255 [CR Doc. 77; CV Doc. 1].  The United States objected to the PF&RD on November 18, 2016.  [Doc. 18].  Mr. Jimenez neither objected to the PF&RD, nor responded to the United States' objections, and the time for doing so has passed.  On de novo review of the portions of the PF&RD to which the United States objects, and having reviewed the briefing, the relevant portions of the underlying criminal record, the relevant authorities, and being otherwise fully advised in the premises, the Court will overrule the objections, adopt the PF&RD, grant Mr. Jimenez's Motion to Correct Sentence under 28 U.S.C. § 2255 [CR Doc. 77; CV Doc. 1], and resentence Mr. Jimenez as expeditiously as possible.

---

[1] Unless specifically noted otherwise, citations to document numbers refer to the docket in the civil case, which is case number 16-cv-0661 RB/SMV.

**Background**

Mr. Jimenez was charged by a Superseding Indictment on November 5, 2003, with one count of being a felon in possession of firearms and one count of being a felon in possession of ammunition, 18 U.S.C. §§ 922(g)(1) and 924(e).  [CR Doc. 14].  He was convicted by a jury on both counts on April 16, 2004.  [CR Doc. 36].  United States Probation and Pretrial Services submitted a Presentence Report ("PSR") to the Court on June 17, 2004.  PSR at 2.  The PSR indicated that Mr. Jimenez qualified as an armed career criminal under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B), because he had four prior "violent felony" convictions: three for non-residential burglary and one for escape from an inmate release program.  *Id.* at 7, 10–12.  The PSR calculated that with the Armed Career Criminal enhancement, Mr. Jimenez's offense level was 33, his criminal history category was VI, and thus, he faced 235–293 months.  *Id.* at 17.

Mr. Jimenez objected to the PSR, arguing, among other things, that his prior convictions for non-residential burglary and escape did not constitute "violent felonies" under ACCA.  [CR Doc. 39] at 1–2.  The Court overruled the objections on May 16, 2005.  [CR Doc. 43].  Specifically, the Court found that "Section 924(e)(2) makes no distinction between different types of burglary offenses, such as commercial burglary and burglary of a dwelling.  Including his prior conviction for commercial burglary, therefore, Mr. Jimenez has three prior burglary convictions that qualify as violent felonies under Section 924(e)(2)."  *Id.* at 4 (citing *United States v. Lujan*, 9 F.3d 890, 893 (10th Cir. 1993)).  The Court adopted the PSR's total offense level of 33, criminal history category of VI, and guidelines range of 235–293 months.

*Id.* at 5.   Ultimately, on May 16, 2005, the Court sentenced Mr. Jimenez to 235 months' imprisonment.  *Id.* at 6; [CR Doc. 45] at 2.

Mr. Jimenez appealed on grounds unrelated to his sentence.  The Tenth Circuit Court of Appeals affirmed his conviction on December 5, 2006.  [CR Doc. 50].  The Supreme Court denied Mr. Jimenez's petition for a writ of certiorari on March 19, 2007.  [CR Doc. 52].  Mr. Jimenez's first motion under § 2255 was denied on April 28, 2009.  [CR Doc. 69].  However, on June 3, 2016, the Tenth Circuit Court of Appeals granted him leave to file this second motion under § 2255.  [CR Doc. 76].

On reference by the undersigned, Judge Vidmar found that New Mexico's burglary statute, § 30-16-3, was divisible into two subsections: residential burglary (subsection A) and non-residential burglary (subsection B).  [Doc. 18] at 10–11.  However, he found that subsection B itself was not further divisible.  *Id.* at 11–15.  Instead, he found that subsection B was overbroad and, therefore, did not amount to "burglary" as enumerated in the ACCA.  *Id.* at 5, 9–11.  Accordingly, Judge Vidmar found that Mr. Jimenez's underlying conviction for violating § 30-16-3(B) did not qualify as an enumerated violent felony; instead, the conviction qualified as a violent felony only under the now invalid residual clause.  *Id.* at 4–15.  Pursuant to *Johnson v. United States* and *Welch v. United States*, Judge Vidmar determined that Mr. Jimenez's sentence was unconstitutional.  He recommended that his motion be granted and that he be resentenced as expeditiously as possible.  *Id.* at 15–16.

## Motions under § 2255 and *Johnson v. United States*

Pursuant to 28 U.S.C. § 2255(a), a "prisoner in custody" pursuant to a federal conviction may "move the court" "to vacate, set aside or correct the sentence" if it "was imposed in violation of the Constitution or laws of the United States."

In *Johnson v. United States*, 135 S. Ct. 2551, 2557 (2015), the Supreme Court held that the so-called residual clause of the definition of "violent felony" in the ACCA was unconstitutionally vague.  The ACCA defined "violent felony" as follows:

> any crime punishable by imprisonment for a term exceeding one year . . . that —
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious  potential risk of physical injury to another*.

18 U.S.C. § 924(e)(2)(B) (emphasis added).   The closing words of this definition, italicized above, have come to be known as the "residual clause."

The Court explained that the residual clause left "grave uncertainty" about "deciding what kind of conduct the 'ordinary case' of a crime involves."   *Id.*   That is, the residual clause "denie[d] fair notice to defendants and invite[d] arbitrary enforcement by judges" because it "tie[d] the judicial assessment of risk to a judicially imagined 'ordinary case' of a crime, not to real-world facts or statutory elements."   *Id.*   Second, ACCA's residual clause left "uncertainty about how much risk it takes for a crime to qualify as a violent felony."   *Id.* at 2558.   By combining these two indeterminate inquiries, the Court held, "the residual clause produces more

unpredictability and arbitrariness than the Due Process Clause tolerates." *Id.*  On that ground it held the residual clause void for vagueness.  *Id.*

Soon thereafter, the Court determined that its ruling in *Johnson* was substantive (as opposed to procedural) and, therefore, had "retroactive effect in cases on collateral review." *Welch v. United States*, 136 S. Ct. 1257, 1268 (2016).  Accordingly, *Welch* opened the door for individuals sentenced under the residual clause of the ACCA's violent-felony definition to move to vacate their sentences as unconstitutional under § 2255.

### Whether Mr. Jimenez is entitled to resentencing turns on whether his prior convictions for non-residential burglary qualified as violent felonies under the enumerated clause or the residual clause.

Mr. Jimenez's designation as an armed career criminal was based on four prior felony convictions:  three for non-residential burglary in New Mexico, NMSA 1978, § 30-16-3(B), and one for escape from an inmate release program.  [CR Doc. 43]; PSR at 7, 10–12.  Mr. Jimenez argued that his sentence should be vacated because none of these convictions qualifies as a violent felony but for the unconstitutionally vague residual clause.  The United States admitted that it had no authority indicating that escape qualifies as a violent felony.  [Doc. 8] at 12.  It hung its hat entirely on the burglary convictions.  *Id.*

Mr. Jimenez argued that his convictions for non-residential burglary could qualify as violent felonies (and, thus, count toward his armed career criminal designation) *only* under the now-invalidated residual clause, entitling him to be resentenced.  The United States argued that the non-residential burglary convictions qualified as violent felonies under the so-called enumerated clause of the ACCA's definition of violent felony ("[T]he term 'violent felony'

means any crime punishable by imprisonment for a term exceeding one year . . . that— . . . (ii) is

burglary, arson, or extortion . . . ."   § 924(e)(2)(B)).[2]   Therefore, the United States argued that

*Johnson* does not apply to this case and Mr. Jimenez should not be resentenced.

### The question of whether Mr. Jimenez's prior convictions for non-residential burglary qualified as violent felonies under the enumerated clause or the residual clause turns on whether the alternatives listed in his statute of conviction are elements or means.

To determine whether a past conviction qualifies as one of the offenses enumerated at

§ 924(e)(2)(B)(ii), courts compare the elements of the crime of conviction with the elements of

the "generic" version of the listed offense—*i.e.,* the offense as commonly understood.   It is

well-established that the prior conviction qualifies as an ACCA predicate if, but only if, its

elements are the same as, or narrower than, those of the generic offense.   *Mathis v. United States*,

136 S. Ct. 2243, 2247 (2016).   In enumerating those offenses, Congress referred only to their

"generic" versions—not to all variants of the offenses.   *Id.* at 2248 (citing *Taylor* v. *United

States*, 495 U.S. 575, 598 (1990)).   To determine whether a prior conviction is for generic

burglary, courts apply what is known as the categorical approach, focusing solely on whether the

elements of the crime of conviction sufficiently match the elements of generic burglary, while

ignoring the particular facts of the case.   *Id.* (citing *Taylor*, 495 U.S. at 600–01).

For example, in *Descamps* v. *United States*, the Supreme Court compared a California

burglary statute ("which provide[d] that a 'person who enters' certain locations 'with intent to

commit grand or petit larceny or any felony is guilty of burglary'") with the generic definition of

---

[2] Mr. Jimenez argues that the non-residential burglary convictions do not fall under the so-called "elements" (or "force") clause (to wit: "[T]he term 'violent felony' means any crime punishable by imprisonment for a term exceeding one year . . . that—(i) has as an element the use, attempted use, or threatened use of physical force against the person of another[.]"  § 924(e)(2)(B).).  [Doc. 1] at 3, 4.  The United States does not dispute this; it argues only that the convictions qualified under the "enumerated" clause.  *See* [Doc. 8] at 12.

burglary ("an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime").  133 S. Ct. 2276, 2279, 2283 (2013) (quoting *Taylor*, 495 U.S. at 599 (for the generic definition of burglary)).  The Court found that the California statute swept more broadly than generic burglary because it criminalized entering a location—even if lawfully—with the intent to steal, whereas generic burglary required an unlawful or unprivileged entry.  *Id.* at 2283.  Accordingly, no conviction under that law could count as an enumerated ACCA predicate, even if the defendant in fact had made an illegal entry and so committed burglary in its generic form.  *Id.*

Some statutes, however, have a more complicated (or "divisible") structure, making the comparison of elements harder.  *Mathis*, 136 S. Ct. at 2249.   A single statute may list elements in the alternative and thereby define multiple crimes.  Suppose, for example, that the California law noted above had prohibited "the lawful entry or the unlawful entry" of a premises with intent to steal, so as to create two different offenses, one more serious than the other.  If the defendant were convicted of the offense with unlawful entry as an element, then his crime of conviction would match generic burglary and count as an ACCA predicate; conversely, the conviction would not qualify if it were for the offense with lawful entry as an element.  A sentencing court must discern which of the alternative elements listed—lawful entry or unlawful entry—was integral to the defendant's conviction (that is, which was necessarily found or admitted).  *Id.*  To address that need, courts begin with a "modified categorical approach" for statutes having multiple alternative elements.  *Id.*  Under that approach, a sentencing court looks to the record of conviction (for example, the indictment, jury instructions, or plea agreement and colloquy) to

7

determine what crime, with what elements, a defendant was convicted of.  Then, the court is able

to compare the elements of that crime, as the categorical approach commands, with the elements

of the relevant generic offense.[3]  *Id.*

The Supreme Court has provided guidance for determining whether a statute is

indivisible or divisible and, thus, whether to implement the modified categorical approach first or

proceed directly to the categorical approach.  *Mathis*, 136 S. Ct. at 2256–57.  The central

question is whether the statute lists multiple *elements* disjunctively, thereby creating multiple

crimes (i.e., a divisible statute, triggering the modified categorical approach), or whether it

enumerates various factual *means* of committing a single element (i.e., an indivisible statute,

requiring the categorical approach).  *Id.* at 2249–50.  In order to determine whether a statute lists

alternative means or elements, courts should look at the plain language of the statute.  If statutory

alternatives carry different punishments, then they must be elements (and, thus, the statute

divisible, triggering the modified categorical approach).  *Id.* at 2257 (citing *Apprendi v.

New Jersey*, 530 U.S. 466 (2000)).

Additionally, state court decisions may also be of assistance to sentencing courts.  The

Iowa Supreme Court, for example, had held that the various premises listed in the burglary

statute at issue in *Mathis* were "'alternative methods' of committing one offense, such that a jury

_____

[3] On at least three occasions, the Tenth Circuit Court of Appeals has applied the modified categorical approach to determine whether New Mexico's non-residential burglary statute qualified as a violent felony under the ACCA. *United States v. Silva*, 608 F.3d 663, 665–69 (10th Cir. 2010); *United States v. King*, 422 F.3d 1055, 1057–58 (10th Cir. 2005); *United States v. Lujan*, 9 F.3d 890, 892–93 (10th Cir. 1993).  Each time it has held that the statute is overbroad; it is not consistent with generic burglary.  Nevertheless, the court went on to look at evidence of the defendant's underlying conviction to "determine the character of [his] burglary."  *Silva*, 608 F.3d at 665–66.  All of these decisions, however, pre-date *Mathis*.  Judge Vidmar concluded that application of the modified categorical approach to New Mexico's non-residential burglary statute, § 30-16-3(B), is no longer permissible under *Mathis*. [Doc. 18] at 7, n.3.

8

need not agree whether the burgled location was a building, other structure, or vehicle." *Id.* at 2256 (citing *Iowa v. Duncan*, 312 N.W.2d 519, 523 (Iowa 1981)). "When a ruling of that kind exists, a sentencing judge need only follow what it says." *Id.*

Next, "if a statutory list is drafted to offer 'illustrative examples,' then it includes only a crime's means of commission." *Id.* (citing *United States v. Howard*, 742 F.3d 1334, 1338 (11th Cir. 2014)). Such a statute, therefore, would be indivisible, and the sentencing court would be restricted to applying the categorical approach. *Id.*

Finally, if state law fails to provide clear answers, sentencing judges may "peek" at the record of a prior conviction itself for "the sole and limited purpose" of determining whether the listed items are means or elements. *Id.* at 1256–57.

### Based on the face of the statute, Judge Vidmar found that the alternatives listed were means and not elements.

At bottom, the dispute here was whether Mr. Jimenez's statute of conviction, § 30-16-3(B), was divisible (thus triggering the modified categorical approach) or indivisible (thus triggering the categorical approach). [Doc. 19] at 1–2; [Doc. 1] at 4–6; [Doc. 8] at 7–12; [Doc. 14] at 1–4. The United States conceded that if subsection B were indivisible, then it would be overbroad and would not match the definition of generic burglary. [Doc. 8] at 6 ("[Section] 30-16-3(B) is broader than generic burglary because it encompasses unlawful entry into not just a building or structure, but a 'vehicle, watercraft, or aircraft.'") (brackets omitted) (quoting *Mathis*, 136 S. Ct. at 2250). Of course, if subsection B were overbroad, then Mr. Jimenez's statute of conviction would not qualify as a violent felony under the enumerated clause. It would qualify only under the residual clause, and Mr. Jimenez would be entitled to

9

resentencing.  However, the United States argued that subsection B is divisible (and triggers the modified categorical approach) because it contains a list of alternative elements.  [Doc. 8] at 9−12.

Mr. Jimenez's statute of conviction reads:

> **Burglary.**
>
> Burglary consists of the unauthorized entry of any vehicle, watercraft, aircraft, dwelling or other structure, movable or immovable, with the intent to commit any felony or theft therein.
>
> **A.** Any person who, without authorization, enters a dwelling house with intent to commit any felony or theft therein is guilty of a third degree felony.
>
> **B.** Any person who, without authorization, enters any vehicle, watercraft, aircraft or other structure, movable or immovable, with intent to commit any felony or theft therein is guilty of a fourth degree felony.

Section 30-16-3.

Based on *Mathis* and the plain language of the statute, Judge Vidmar found that § 30-16-3 was divisible.  [Doc. 18] at 10–11.  He found that the alternative elements were separated into subsections A and B.  Subsection A was reserved for burglary of a "dwelling house," a third degree felony.  Subsection B was reserved for non-residential burglary, a fourth degree felony.  *Id.*  Because he found the statute to be divisible, he limited his examination of the state court documents only to determining whether Mr. Jimenez was convicted under subsection A or subsection B.  *Id.* at 10 (citing *Mathis*, 136 S. Ct. at 2249 (describing the modified categorical approach)).

10

He found that the charging documents indicated that Mr. Jimenez was charged with burgling a church, a restaurant, and a liquor store.  *Id.* (citing [Doc. 8-1] at 1 (criminal information alleging burglary of the First Spanish Assembly of God), [Doc. 8-2] at 1 (criminal information alleging burglary of the Hamburger House), [Doc. 8-3] at 1 (criminal information alleging burglary of the Quality Liquor Store)).  None of these was a dwelling house.  Therefore, Judge Vidmar found that Mr. Jimenez had been convicted under subsection B and not subsection A.  *Id.*

Judge Vidmar then compared the elements of subsection B with the generic definition of burglary.  *Id.* at 10–11.  He found that § 30-16-3(B) was overbroad.  *Id.*  He noted that the government, in fact, had conceded the point.  *Id.* at 10 (citing [Doc. 8] at 6).  He found that there was no dispute over the generic definition of burglary: Congress meant a crime "contain[ing] the following elements: an unlawful or unprivileged **entry into a building or other structure**, with intent to commit a crime."  *Id.* at 10 (quoting *Mathis*, 136 S. Ct. at 2248 (emphasis added) (internal ellipsis omitted) and citing [Doc. 8] at 4 (United States' reference to the same generic definition); [Doc. 1] at 4–5 (Mr. Jimenez's reference to the same generic definition)).  Subsection B provides that "[a]ny person who, without authorization, **enters any vehicle, watercraft, aircraft or other structure, movable or immovable**, with intent to commit any felony or theft therein is guilty of a fourth degree felony."   § 30-16-3(B) (emphasis added).  Judge Vidmar found that subsection B was overbroad because it encompassed unlawful entries into more than just "buildings or other structures."  [Doc. 18] at 10–11.  He found that it also

11

encompassed unlawful entries into vehicles and watercraft.  *Id.* (citing *Mathis*, 136 S. Ct. at 2250).

### Judge Vidmar found that *Howard* did not compel a different result.

This would have been the end of Judge Vidmar's analysis.  The United States, however, urged another analytical step.  The United States argued that subsection B itself was further divisible.  [Doc. 8] at 9–12.  The government argued that subsection B set out alternative elements, that is, alternative crimes.  The government urged the Court to examine the charging documents to determine whether Mr. Jimenez had been convicted of burgling a vehicle (which would not match the generic definition of burglary), a watercraft (which also would not match), an aircraft (which also would not match) or an "other structure" (which could match).  [Doc. 8] at 11.  Because the charging documents showed that Mr. Jimenez was convicted of burgling structures (i.e., a church, a restaurant, and a liquor store), the United States urged that his convictions were for generic burglary and, thus, constituted enumerated violent felonies precluding resentencing under *Johnson*.  *Id.*

To support its position, the government followed the guidance outlined in *Mathis* for determining whether the alternatives listed in a statute are elements (making the statute divisible) or means (making the statute indivisible).  [Doc. 8] at 9–11.  First, the government conceded that the statutory penalties were the same for any of the alternatives listed in subsection B, *id.* at 9, which Judge Vidmar found suggested that they were means rather than elements, [Doc. 18] at 11.  Second, the government admitted that it "ha[d] been unable to locate any New Mexico state case

addressing whether the alternatives listed in § 30-16-3(B) are elements or means of committing [non-residential] burglary."  [Doc. 8] at 9.

Next, the government argued that the alternatives listed in subsection B ("any vehicle, watercraft, aircraft or other structure, movable or immovable") did not constitute a list of "illustrative examples."  *Id.* at 9–11 (citing *United States v. Howard*, 742 F.3d 1334, 1348 (11th Cir. 2014)).  In other words, the government argued, the New Mexico statute "sets out one or more elements of the offense in the alternative," i.e., "vehicle, watercraft, aircraft, *or* other structure."  *Id.* (quoting § 30-16-3(B) (emphasis added)).

Judge Vidmar was not persuaded.  [Doc. 18] at 13–15.  He found that subsection B did, in fact, contain a non-exhaustive list of illustrative examples, i.e., alternative means—not elements—for several reasons.  *Id.*

First, as the government had conceded, Judge Vidmar noted that the statutory penalty is the same for all of the alternatives listed in subsection B.  *Id.* at 13.  Judge Vidmar found that this uniformity tended to show that the list was one of means, not elements.  *Id.*   Second, Judge Vidmar found that the organization of the statute indicated that it was divisible into only subsections A and B, and that subsection B was not further divisible.  *Id.*   The state legislature obviously knew that it was separating residential burglary (in subsection A) from all other burglaries (in subsection B).  If it had intended to create other additional crimes, Judge Vidmar reasoned, it would have drafted further subsections.  *Id.*   Third, Judge Vidmar found that the New Mexico Supreme Court had strongly suggested that the list of alternatives in subsection B was a non-exhaustive list of alternative means.  *Id.* at 14–15 (citing *New Mexico v. Office of the*

13

*Public Defender ex rel. Muqqddin*, 2012-NMSC-029, 285 P.3d 622).   Accordingly, he determined that the modified categorical approach should not be applied to subsection B.[4]

## Standard of Review for Objections
## to Magistrate Judge's PF&RD

A district judge must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."   28 U.S.C. § 636(b)(1)(C).   "[O]bjections to the magistrate judge's report must be both timely and specific to preserve an issue for de novo review by the district court[.]"   *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996).   To preserve an issue, a party's objections to a PF&RD must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute."   *Id.*   Moreover, "theories raised for the first time in objections to the magistrate judge's report are deemed waived."   *United States v. Garfinkle*, 261 F.3d 1030, 1030−31 (10th Cir. 2001).

## Analysis

On de novo review, the Court agrees with Judge Vidmar that § 30-16-3, on its face, is divisible only into subsections A and B, and that subsection B itself is not further divisible.   The government's objections do not address the statute on its face.   [Doc. 19] at 1–4.   They are straw man objections and do not compel a different result.   They will be overruled.

---

[4] Judge Vidmar rejected the United States' invitation to find that New Mexico law was unclear as to whether the list of alternatives in subsection B was one of elements or means.   [Doc. 18] at 15, n.4 (citing [Doc. 8] at 11–12).   If state law were unclear, the Court could "peek" at the record of conviction "for the sole and limited purpose of determining whether the listed items are elements of the offense."   *Mathis*, 136 S. Ct. at 2256–57 (internal quotation marks and brackets omitted).   Judge Vidmar found, however, that state law was clear.   [Doc. 18] at 15, n.4.   The list of alternatives is one of means, not elements.   Accordingly, Judge Vidmar determined that looking to Mr. Jimenez's record of conviction was neither necessary nor permissible.   *Id.*

<u>Based on the face of the statute,</u>
<u>the alternatives listed are means and not elements.</u>

It is worth a brief review of the standard for determining whether a statute is indivisible or divisible.[5]  *Mathis*, 136 S. Ct. at 2256–57.  At the outset, the *Mathis* Court indicated that the elements-versus-means analysis would be "easy" in "many" cases.  *Id.* at 2256.  If a state court decision "definitively answers the question, . . . . a sentencing judge need only follow what it says."  *Id.*  Or "the statute on its face may resolve the issue."  *Id.*  For example, if statutory alternatives carry different punishments, then they must be elements (and, thus, the statute divisible, triggering the modified categorical approach).  *Id.* at 2256 (citing *Apprendi*, 530 U.S. 466).  "Conversely, if a statutory list is drafted to offer 'illustrative examples,' then it includes only a crime's means of commission."  *Id.*  "And a statute may itself identify which things must be charged (and so are elements) and which need not be (and so are means)."  *Id.*  "Armed with such authoritative sources of state law, federal sentencing courts can readily determine the nature of an alternatively phrased list."  *Id.*  Finally, if state law fails to provide clear answers, sentencing judges may "peek" at the record of a prior conviction itself for "the sole and limited purpose" of determining whether the listed items are means or elements.  *Id.* at 2256–57.

The Court agrees with Judge Vidmar that Mr. Jimenez's statute of conviction, on its face, is clear.  It reads:

---

[5]  If the statute is divisible, the court implements the modified categorical approach first.  If it is indivisible, the court proceeds directly to the categorical approach.  *Mathis*, 136 S. Ct. at 2256–57.  The central question is whether the statute lists multiple *elements* disjunctively, thereby creating multiple crimes (i.e., a divisible statute, triggering the modified categorical approach), or whether it enumerates various factual *means* of committing a single element (i.e., an indivisible statute, requiring the categorical approach).  *Id.* at 2249–50.

**Burglary.**

Burglary consists of the unauthorized entry of any vehicle, watercraft, aircraft, dwelling or other structure, movable or immovable, with the intent to commit any felony or theft therein.

    **A.** Any person who, without authorization, enters a dwelling house with intent to commit any felony or theft therein is guilty of a third degree felony.

    **B.** Any person who, without authorization, enters any vehicle, watercraft, aircraft or other structure, movable or immovable, with intent to commit any felony or theft therein is guilty of a fourth degree felony.

Section 30-16-3. First, the statute is explicitly divided into two subsections: residential burglary in subsection A and every other kind of burglary in subsection B. There is no further division. Second, the plain text of subsection B includes a non-exhaustive list of examples of "other structures." Nothing in this statute suggests "vehicle" and "other structure" are disjunctive such that burgling a vehicle would be a separate crime from burgling an "other structure." That reading is not plausible. Instead, "other structure" is a category of places; and vehicles, watercraft, and aircraft are examples provided to clarify the meaning of the term "other structure." Third, the statute explicitly classifies residential burglary as a more serious felony than non-residential burglary. Accordingly, residential burglary is punishable by three years imprisonment, whereas non-residential burglary is punishable by only eighteen months imprisonment. § 31-18-15(A)(11), (13) (explaining the basic sentence for third and fourth degree felonies). The statute does not further provide for different punishments for the alternatives listed in subsection B. The explicit construction and plain text of the statute, as well

as the alternative punishments listed, together convey divisibility into two subsections exclusively: A (residential burglary) and B (non-residential burglary) and no further.

There is no dispute that Mr. Jimenez's prior convictions are for subsection B and not subsection A. Comparing the elements of subsection B with the generic definition of burglary, the Court agrees with Judge Vidmar (and the government's concession) that § 30-16-3(B) is overbroad. *See* [Doc. 8] at 6. Subsection B is overbroad because it encompasses unlawful entries into more than just "buildings or other structures"; it also encompasses unlawful entries into vehicles and watercraft. *See Mathis*, 136 S. Ct. at 2250. Mr. Jimenez should be resentenced.

<u>The government's objections do not compel a different result.</u>

The government challenges the PF&RD on four grounds. [Doc. 19]. First, the government argues that under *Mathis*, any state case on which a sentencing court relies must be "definitive" in clarifying that a statutory list of alternatives is one of elements or means. *Id.* at 1−3. Arguing that *Muqqddin* does not "definitively" answer the means-elements question, the United States reasons that Judge Vidmar misapplied *Mathis*. *Id.* Second, the government argues that the lack of different penalties for the alternatives listed in subsection B does not answer the question of elements versus means. *Id.* at 3–4. Third, the government re-asserts its argument that pursuant to *Howard*, the list of statutory alternatives in subsection B is *not* one of illustrative examples. *Id.* at 4. Finally, the government argues that New Mexico law is unclear, so the Court should look to Mr. Jimenez's Criminal Informations. Because the Informations each list only a structure (to the exclusion of the other statutory alternatives), the Court should conclude that the

alternatives in subsection B are elements.  *Id.*  These are straw man objections.  They do not address the plain language and explicit construction of the statute, on which this case turns.  Although it is extraneous to the ultimate holding in this case, the Court will indulge the government briefly to explain why the issues it raises actually bolster the conclusion that the alternatives in subsection B are means and not elements.

The first objection rests on an untenable reading of *Mathis*.  The objection presumes that a court should ignore state law authorities unless they are "definitive" on the question of elements or means.  [Doc. 19] at 3 ("This Court should not speculate, as that is not what the Supreme Court instructed in *Mathis*.  Instead, the analysis is straightforward: if an 'authoritative' source of state law answers the question, the Court must follow that authoritative source.  Where there is no answer, the Court continues to the next prong of the *Mathis* analysis.").  The United States argues that Judge Vidmar erred when he relied on *Muqqddin* because that case is not "definitive" as to whether the list in subsection B is one of elements or means.  *Id.*  The government urges that because no case has been identified indicating that the alternatives in subsection B are definitely means or definitely elements, the question cannot be answered clearly enough to satisfy *Mathis*.  *Id.* at 1–4.  Thus, the Court's only alternative is to look at the record of conviction.  *See id.*  The government wants to throw the baby out with the bathwater.  The Court is not persuaded.

The Court does not read *Mathis* to say that absent a state case definitively answering the elements-means question, a court must abandon any further consideration of state court decisions

and proceed to the record of conviction.[6]   Rather, the Court reads *Mathis* to say that if a sentencing court is fortunate enough to find a state case that definitively answers the elements-means question, then it may rely on that case alone; a court would not need to analyze any of the other factors to answer the question.  And if the sentencing court cannot find a state case definitively answering the question, then *Mathis* directs it to analyze the other factors.

If the government were right that *Mathis* forbade reliance on state cases unless they were definitive, the other *Mathis* factors would serve no purpose.  The Court declines to read *Mathis* as the government suggests because to do so would render meaningless all but the first *Mathis* factor.

Next, the government points out that although under *Mathis* (and *Apprendi*) statutory alternatives are necessarily elements if they carry different punishments, the converse is not necessarily true.  *Id.* at 3–4.  Where the alternatives carry the same punishment, they are not necessarily means.  So, the government concludes that "[t]he lack of separate penalties here simply does not answer the question of divisibility."  *Id.* at 4.  The government is correct, but the Court fails to see what difference it makes.  If Judge Vidmar had suggested that the same punishments, *ipso facto*, necessarily meant means, then the objection would be well-taken.  But he did not.  *See* [Doc. 18] at 11.  Rather, he found that the same punishments in subsection B

---

[6] Justices Breyer and Alito did not appear to read the majority opinion in *Mathis* as requiring definitive answers from state court cases, thereby directing sentencing courts to disregard anything else.  *See Mathis*, 136 S. Ct. at 2264.  Justice Breyer wrote, "there are very few States where one can find authoritative judicial opinions that decide the means/elements question. . . . [Therefore, often the] parties will have to look to other state cases to decide whether [the statutory alternative] is a 'means' or an 'element.'  That research will take time and is likely not to come up with an answer.  What was once a simple matter will produce a time-consuming legal tangle."  *Id.* Similarly, Justice Alito wrote, "[t]he Court assures the federal district judges who must apply ACCA that they do not need ["definitive"] state-court decisions, [and] that it will be easy for federal judges to predict how state courts would resolve this question if it was ever presented to them."  *Id.* at 2269.  Analyzing less-than-definitive state authorities was clearly contemplated (and criticized) in the dissenting opinions.  *See id.*

in contrast with a harsher punishment in subsection A, weighed in favor of means.  *Id.*  The Court agrees with him, particularly in the context of this case where other indications point to means, as well.

Third, the United States disagrees that subsection B contains a list of illustrative examples.  [Doc. 19] at 4.  The government looks to *Howard* for support.[7]  On de novo review, the Court is not persuaded by the government's *Howard* analysis, especially considering *Muqqddin*.  *See id.* at 4; [Doc. 8] at 9–11.  The list of alternatives in subsection B is a non-exhaustive list of illustrative examples.  The objection is overruled.

Finally, the government urges the Court to find that "[New Mexico] law fails to provide clear answers" and, thus, "peek" at Mr. Jimenez's record of conviction to see if it can help resolve the question of elements versus means.  [Doc. 19] at 4.  In *Mathis*, the Court explained that if the charging document and correlative jury instructions both used an umbrella term like "premises" or both listed the alternatives together, e.g., "building, structure, or vehicle," such construction would be "as clear an indication as any that each alternative is only a possible means of commission, not an element that the prosecutor must prove to a jury beyond a reasonable doubt."  136 S. Ct. at 2256–57.  Conversely, if the charging document and correlative jury instructions both referenced one of the alternatives to the exclusion of all others, such construction "could indicate . . . that the statute contains a list of elements, each one of which goes toward a separate crime."  *Id.* at 2257.

---

[7] In arguing that under *Howard*, the list of statutory alternatives in subsection B is *not* a list of illustrative examples, the government completely abandons its position that the Court may not rely on authorities unless they are "definitive."  After all, *Howard* says nothing definitive about any New Mexico law, much less § 30-16-3(B). *See also* [Doc. 19] at 4 (government's concession that *Howard* is not determinative: "Where, as here, "state law fails to provide clear answers" to the question of elements or means, . . .").

Here, the charging documents indicate that Mr. Jimenez was charged with burgling a church, a restaurant, and a liquor store.  [Doc. 8-1] at 1 (criminal information alleging burglary of the First Spanish Assembly of God); [Doc. 8-2] at 1 (criminal information alleging burglary of the Hamburger House); [Doc. 8-3] at 1 (criminal information alleging burglary of the Quality Liquor Store)).  The correlative jury instructions read:

**Burglary; essential elements**

For you to find the defendant guilty of burglary [as charged in Count        ][1], the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1.    The defendant entered a [vehicle] [watercraft] [aircraft] [dwelling] [or] [other structure] without authorization; [the least intrusion constitutes an entry;][3]

2. The defendant entered the [vehicle] [watercraft] [aircraft] [dwelling] [or] [other structure] with the intent to commit [a theft] [or] [        ][4] *(name of felony)* when inside;

3. This happened in New Mexico on or about the day of        ,       .

USE NOTE

1.    Insert the count number if more than one count is charged.

2.    If the charge is burglary of a dwelling house, UJI 14-1631 should be given.

3.  Use bracketed phrase if entry is in issue.

4.  It is not necessary to instruct on the elements of theft.  If intent to commit a felony is alleged, the essential elements of the felony must be given.

UJI 14-1630 NMRA (footnote number 2 does not appear in the text of the instruction).

**Burglary; "dwelling house"; defined**

A "dwelling house" is any structure, any part of which is customarily used as living quarters.

USE NOTE

1. For use in conjunction with UJI 14-1630.

UJI 14-1631 NMRA.

The Informations allege that Mr. Jimenez burgled the "First Spanish Assembly of God," "the Hamburger [H]ouse [at] 619 E. Second," and "Quality Liquor Store at 1400 S. Main." [Doc. 8-1] at 1; [Doc. 8-2] at 1; [Doc. 8-3] at 1.   The government sees these Informations as indicating that the alternatives in subsection B are elements because the Informations do not also list the other statutory alternative places of commission of non-residential burglary.   However, the Informations should not be viewed in isolation, without also looking at the correlative jury instructions.   *See Mathis*, 136 S. Ct. at 2256–57.   The Court understands the United States' argument but finds it unavailing, especially when the Informations are viewed alongside the correlative jury instructions.   The instructions explicitly classify the place of commission as a single element.   UJI 14-1630.   Only a dwelling house is treated differently from the other places of commission.   *Id.*; UJI 14-161.   Review of Mr. Jimenez's Criminal Informations and the correlative jury instruction only serves to buttress what is clear on the face of the statute. New Mexico's burglary statute, § 30-16-3, is divisible into subsection A (for residential burglary) and subsection B (for all other burglaries) and no further.

The government's detour—though extraneous—only buttresses the conclusion that subsection B contains a list of means (not elements) and, thus, is not divisible, and the modified categorical approach is not permissible.  The statute on its face is clear.

<u>Conclusion</u>

Although § 30-16-3 is divisible into subsections A (residential burglary) and B (non-residential burglary), subsection B itself is not further divisible.  Subsection B is overbroad.  Mr. Jimenez's prior convictions for New Mexico non-residential burglary qualify as violent felonies *only* under the now-invalidated residual clause.  He should be resentenced.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that the United States' Objections to the Magistrate Judge's Proposed Findings and Recommended Disposition [CR Doc. 94; CV Doc. 19] are **OVERRULED**.

**IT IS FURTHER ORDERED** that the Magistrate Judge's Proposed Findings and Recommended Disposition [CR Doc. 93; CV Doc. 18] are **ADOPTED**.

**IT IS FURTHER ORDERED** that Defendant Marcello Jimenez's Motion to Correct Sentence under 28 U.S.C. § 2255 [CR Doc. 77; CV Doc. 1] is **GRANTED**.  Mr. Jimenez will be resentenced as expeditiously as possible.

**IT IS SO ORDERED.**

_____
**ROBERT C. BRACK**
**United States District Judge**

23